United States District Court
Eastern District of Michigan
Southern Division

United States of America,

    Plaintiff,                           Case No. 18-20641

    v.                                   Honorable Terrence G. Berg

D-1 Toriano Adams,

    Defendant.
_____/

## United States' Sentencing Memorandum

    The financial systems that we all rely upon are ever-more-frequently being targeted by criminals who have been enabled and emboldened by data breach after data breach. Our Personal Identifying Information (PII) is available for pennies to those who know where to look. And the sentences for these offenses rarely match the scope of their harm.

    Between 2015 and 2017, Toriano Adams and his codefendants conducted an incredibly prolific—and profitable—credit card fraud scheme, targeting multiple stores in multiple states and causing multi-million-dollar losses.  There is no dispute that his group skillfully used credit card fraud to rip off Walmart stores for well over a million dollars

(and arguably millions more), and when credit card fraud became harder to pull off, they turned to identity theft to scam AT&T out of an additional $1.6 million.

Lucrative and low-consequence crime catches on, leading to more fraud and more victims. To counter the widespread perception that engaging in fraud is worth the risk, the government urges the Court to sentence Adams to the top of what the government believes to be his guidelines range—132 months in prison (108 months for the substantive counts, plus a mandatory 24 months for aggravated identity theft—to hold him fully accountable for the scope of his crimes, particularly since he and the rest of his conspirators will almost certainly be unable to make their victims whole in terms of restitution.

## I. Factual and Procedural History

Between 2015 and 2017, Toriano Adams counseled, advised, and participated in one of the most sophisticated—and successful—fraud rings in the United States. Adams and his group primarily targeted Walmart stores across the country where they used counterfeit credit cards to purchase gift cards in $500 increments. The group methodically traveled to locations outside of Detroit and even limited their purchases

at each store to avoid detection. Once they finished at one store, they would travel to nearby Walmart locations to engage in more fraud before returning to Detroit with their ill-gotten proceeds.

October 2016 illustrates the group's methodology. Toriano Adams, Devin Simmons, and OD Williams traveled to Virginia on October 6 to target Walmart stores in Vienna; and Fairfax, and Manassas, and Dulles—hitting all four cities on the same day. Five days later, on October 11, Adams and Devin Simmons hit two more stores in Philadelphia and Warrington, Pennsylvania. The following week, on October 17, OD Williams rejoined the pair and the three hit stores in Kansas City, Missouri and Bonner Springs, Shawnee, Olathe (x2) and Overland Park, Kansas. The in-store time commitment (and risk of getting caught) was minimal, literally a few minutes per store. The upside was tremendous. Across those <u>three days</u> alone, the trio managed to fraudulently acquire more than $85,000 in gift cards—more than the average household in America earned that *entire year*.[1]

---

[1] According to the U.S. Census Bureau, the average household income in America in 2016 was slightly more than $60,000. https://www.census.gov/content/dam/Census/library/publications/2019/acs/acsbr18-01.pdf (last accessed September 28, 2021).

These trips were not an aberration. The group hit Walmart stores in bunches—flying or driving to cities and then going from Walmart to Walmart to Walmart before returning home with thousands and thousands in fraudulently obtained gift cards. The fraud affected stores in Alabama, Arizona, Arkansas, Colorado, Connecticut, Delaware, Florida, Georgia, Illinois, Iowa, Indiana, Kansas, Kentucky, Louisiana, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Nebraska, New Hampshire, New York, North Carolina, Ohio, Oklahoma, Pennsylvania, South Carolina, Tennessee, Texas, Utah, Virginia, West Virginia, and Wisconsin.

From time to time, members of the group were caught. But each time, they received a slap on the wrist and returned to their fraud scheme undeterred. Indeed, Toriano Adams himself was arrested in December 2017 for committing fraud with gift cards here in Michigan; he received a fine of $435 and costs. (PSR ¶ 47). If anything, this arrest (and the similarly inconsequential arrests of his co-defendants) can be seen to have heartened Adams and his coconspirators.

In 2017, credit card fraud became passé. The introduction of chip readers at point-of-sale terminals made it harder to pull off, so

4

sophisticated fraudsters—like Adams and his cohorts—shifted to other methods to earn money illegally.

First, Adams employed the services of co-defendant Tayan Jackson, an accomplished confidence man, who was able to circumvent American Express security protocols and convince its customer service agents to override fraud stops on specific customer accounts. This allowed the Walmart fraud to continue for a few more months.

Ultimately though, Toriano Adams and the others moved on, shifting toward more traditional identity theft to illegally obtain nearly 1,500 Apple iPhones from AT&T stores across the country. Like the gift cards they acquired through fraud, they resold those iPhones for profit, leaving unwitting accountholders with the bill for the phones.

Walmart investigators spent hundreds of hours to identify the fraud ring targeting their stores, with analysts poring through transaction records and reviewing video from stores across the country. This conspiracy represented one of the most prolific and dynamic examples of fraud in recent memory. In fact, it was believed by Walmart loss prevention investigators to account for nearly 100% of all hand-keyed credit card fraud at Walmart stores nationwide—a total loss of

almost $11 million [Note: despite this belief and a common modus operandi, the remaining defendants are only being held accountable for losses stemming from transactions where one or more of them were observed in a given store at the time the transaction took place]. In time, Walmart and the FBI successfully identified the most culpable individuals and tracked them back to Detroit.

A grand jury indicted Adams with conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349, conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h), and multiple counts of aggravated identity theft, in violation of 18 U.S.C.§ 1028A(a)(1). (ECF No. 1, PageID.1).

Adams ultimately pleaded guilty to all counts. (ECF No. 116, PageID.508). He faces a maximum term of imprisonment of 54 years, a fine of up to $500,000, a special assessment of $900, and a 3-year term of supervised release. (PSR ¶ 84-92).

## II. Sentencing Guideline Calculations and Relevant 3553(a) Factors

Congress has provided, through 18 U.S.C. § 3553(a), the relevant objectives and factors to be considered to impose a sentence "sufficient, but not greater than necessary" to promote the objectives of sentencing:

Those objectives include the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, protect the public from additional crimes by the defendant, and provide the defendant with needed training, care, or correctional treatment. To those ends, the Court should consider: (1) the nature and circumstances of the offense, and the history and characteristics of the defendant; (2) the need to provide just punishment and adequate deterrence; (3) the kinds of sentences legally available; (4) the Sentencing Guidelines; (5) Sentencing Commission policy statements; (6) the need to avoid unwarranted sentencing disparities (nationwide) among defendants with similar records found guilty of similar conduct; and (7) the need to provide restitution to victims.

But sentencing starts with the calculation of the Guidelines range in order to promote the sentencing goals of Congress, namely to "provide certainty and fairness in meeting the purposes of sentencing, while avoiding unwarranted sentencing disparities[.]" *United States v. Booker*, 543 U.S. 220, 264 (2005). Indeed, "[s]entencing disparities are at their ebb when the Guidelines are followed, for the ranges are

themselves designed to treat similar offenders similarly. . . . The more out-of-range sentences that judges impose, the more disparity there will be." *United States v. Elliot*, 327 F. App'x 540, 549 (6th Cir. 2009).

    A.    <u>The Sentencing Guidelines</u>

Both the parties and the Probation Department previously calculated (and agreed) that defendant Toriano Adams' combined guideline range was 132-159 months (108-135 months on the substantive counts, plus a mandatory 24 months for the aggravated identity theft counts). This range was driven primarily by a total loss within the range of $3,500,000 to $9,500,000, resulting in a total Offense Level of 30.

However, the government has since made a determination that a reasonable estimate of the reasonably foreseeable losses attributable to Toriano Adams instead falls within the range of $1,500,000 to $3,500,000; likewise, the government will be taking a similar position with respect to all of the remaining defendants. Accordingly, this lower loss figure would result in a two-point reduction in the Offense Level, bringing the total Offense Level down to 28. Factoring in Adams' prior conduct, which places him in Criminal History Category II, this yields a

8

range of 87-108 months for the substantive counts. For purposes of sentencing, the government believes that Toriano Adams therefore faces a combined, total guideline range of 111-132 months.

    B.    <u>Section 3553(a) Factors</u>

In this case, the most significant factors are the seriousness of the offense, the need to protect the public, and the need to deter Adams and others from engaging in credit card fraud and identity theft. 18 U.S.C. §§ 3553(a)(1), (a)(2)(A)–(C).

    i.    <u>Nature and Circumstances of the Offense</u>

Credit card fraud and identity theft are serious crimes affecting millions of Americans. While often dismissed by offenders and courts as invisible, "victimless" crimes felt primarily by financial institutions, the impact on victims is quite significant. Each victim must go through the time, expense, and emotional toll of dealing with creditors to reclaim their finances. But that is not all. Identity theft can also affect the victims' ability to find housing, obtain a new job, or even retire. And when victims do manage to successfully piece together their financial lives, they still do not reclaim their sense of security, but rather are left to wonder who else might have, or use, that information in the future.

This is especially true now given the increasing frequency of data breaches and the ease with which fraudsters can acquire batches of PII. The emotional toll from the crime is long-lasting; experts now compare identity theft to a persistent disease that may go into remission but is never cured.[2]

Despite graduating high school and going on to obtain a bachelor's degree in criminal justice, Toriano Adams nevertheless decided to provide for himself and his family by committing fraud—hundreds upon hundreds of thousands of dollars of fraud. Multiple schemes, across multiple states, over multiple years. Adams exploited countless innocent people by using their credit card accounts and identity information, without their knowledge, for his own personal gain. Adams acted with little regard for how his actions would affect the victims financially, physically, or emotionally. He should be held accountable for the harm his schemes have inflicted.

---

[2] Identity Theft Resource Center, The Aftermath: The Non-Economic Impacts of Identity Theft - 2018, https://www.idtheftcenter.org/wp-content/uploads/2018/09/ITRC_Aftermath-2018_Web_FINAL.pdf (last accessed September 28, 2021).

      ii.     History and Characteristics of the Defendant

Adams is nearly 36 years old. He grew up in a loving home, which provided for all his basic needs. (PSR ¶ 58-60). The defendant completed high school, and went on to obtain an associate's degree and then a bachelor's degree. Nevertheless, he has limited employment history and two prior fraud convictions. One of those convictions occurred during the instant conspiracy. As discussed previously, Adams received a small fine and was wholly undeterred, continuing to defraud AT&T well into 2018 and contributing to total company losses in excess of $1.3 million.

      iii.     Seriousness of the Offense

Credit card fraud is a serious crime that affects not only the account holders, but all of society. Victims suffer monetary damages and must prove that they did not, in fact, make the charge(s) in order to get reimbursed. But this process is lengthy, and it often involves temporary damage to their credit scores. Some reports indicate it can take hundreds of hours to undo the damage.[3]

---

[3] *See* Madeleine Scinto, *Beware: Credit Card Fraud Will Pound Your Score*, BUSINESS INSIDER, Nov. 1, 2011, http://www.businessinsider.com/beware-credit-card-fraud-will-pound-your-credit-score-2011-11 (last accessed September 28, 2021).

11

The cost to society is enormous. There is over $11 billion in credit card fraud each year. Retailers and banks spend billions each year to combat credit card fraud, and yet there is still widespread fraud in the United States. Ultimately, these costs are borne by everyone in the form of higher prices and increased fees.[4]

Locally, thousands of Michiganders suffer from identity theft each year. Per capita, 716 people out of every 100,000 in the state will be the victim of some type of fraud, with 140 people the victim of identity theft specifically.[5] Credit card fraud accounts for 23% of the fraud reported in Michigan—much of it centered in Detroit and the surrounding metropolitan area. In fact, when this case was charged in 2018, the Detroit-Warren-Dearborn area ranked #12 in the country in reported identity theft incidents, with the Ann Arbor metro area close behind at #18.[6]

---

[4] Adam Dolby, *Collateral Damage: The Effect of Card Fraud on Small Businesses, Customers and the Economy*, HUFFINGTON POST, April 24, 2014, http://www.huffingtonpost.com/adam-dolby/collateral-damage-the-eff_b_5206822.html (last accessed September 28, 2021).

[5] Federal Trade Commission, Consumer Sentinel Network Data Book 2018, https://www.ftc.gov/system/files/documents/reports/consumer-sentinel-network-data-book-2018/consumer_sentinel_network_data_book_2018_0.pdf

[6] *Id.* at 75.

   iv. <u>Need for Deterrence</u>

 Adams' previous convictions did not deter him from engaging in crime generally, or theft specifically. Indeed, his most-recent conviction is similar in nature to the instant offense (PSR ¶ 47), yet Adams continued to engage in credit card fraud and identity theft for another nine months thereafter, until he was arrested on these charges. Fines, probation, and generally lenient sentences proved ineffective at stopping Adams from engaging in further criminal activity.

 In terms of specific deterrence, given the sheer scope of this fraud scheme, it is unclear whether any sentence would be sufficient to deter Adams from engaging in fraud in the future. Regardless, given the prevalence of fraud in southeast Michigan, a stringent sentence will still inform others of the severe punishment they will face if they turn to fraud as a way to "get rich quick."

 Prior government counsel collected numerous media citations from 2019, reporting over a dozen Detroit-area residents engaging in credit card fraud throughout Michigan and in places as far as away as Wisconsin and Missouri; they are provided again herein by way of

illustration.[7] Credit card fraud and identity theft are a significant problem; these crimes should be met with significant sentences, consistent with their significant guideline ranges.

     v.    <u>Promoting Respect for the Law and Providing Just Punishment</u>

Adams has shown no respect for the law, as evidenced by his return to this very fraud scheme after receiving a fine for the fraudulent use of a gift card… which is exactly the type of crime that now brings him before this Court.

In terms of just punishment, the United States believes this case warrants a combined sentence at the top of the guidelines range: 132 months. This is a case of sophisticated credit card fraud that affected

---

[7] Cole Waterman, Police in Bay County Arrest 2 Detroit-Area Men Suspected of Credit Card Fraud Throughout State, Aug. 27, 2019, https://www.mlive.com/news/saginaw-bay-city/2019/08/police-in-bay-county-arrest-2-detroit-area-men-suspected-of-credit-card-fraud-throughout-state.html ; Brendan Quealy, Two Arrested in Meijer Fraud Scheme, Aug. 24, 2019, https://www.record-eagle.com/news/local_news/arrested-in-meijer-fraud-scheme/article_e0ba4162-c50b-11e9-ae00-93091a58794c.html; Kaitlin Edquist, Four Men Charged With Credit Card Fraud at Meijer Locations in Howard, Sheboygan, Aug. 21, 2019, https://www.greenbaypressgazette.com/story/news/2019/08/21/meijer-four-men-accused-credit-card-fraud-sheboygan-green-bay/2071398001l; Amber Ruch, Two Arrested in Connection to McCracken Co. Credit Card Fraud Investigation, June 28, 2019, https://www.kfvs12.com/2019/06/28/arrested-connection-mccracken-co-credit-card-fraud-investigation/;
Roberta Acoasta, Two Arrested in Credit Card Fraud Case Involving 20 Victims, June 24, 2019, https://www.mlive.com/news/saginaw-bay-city/2019/06/2-arrested-in-credit-card-fraud-case-involving-20-victims.html.

nationwide retailers on a massive scale, and defendant Toriano Adams was intimately involved with all aspects of the scheme, across all its various phases. The losses are staggering and require serious punishment.

      v.      Restitution, Fines, and Forfeiture

The defendant's crimes caused significant financial losses to multiple private businesses; thus, the United States seeks imposition of a mandatory restitution order under the Mandatory Victim Restitution Act, 18 U.S.C. § 3663A, in the total amount of $2,343,863.50 ($336,000 to Walmart; $1,603,476.80 to AT&T; and $404,386.70 to American Express), payable jointly and severally with the codefendants in this case.

In addition to ordering restitution, the government would ask the Court to adopt the special conditions suggested by the Probation Department in ¶155 of the PSR, and require the defendant to pay a $900 special assessment.

## III. Conclusion

For all these reasons, the United States recommends a 108-month sentence of imprisonment for counts one and two, followed by the mandatory 24-month sentence for the aggravated identity theft charges in counts seventeen through twenty-three, for a total sentence of 132 months in custody.

The government also asks for a mandatory order of restitution in the total amount of $2,343,863.50.

                                                Respectfully submitted,

                                                Saima S. Mohsin
                                                Acting United States Attorney

                                                *s/Ryan A. Particka*
                                                Ryan A. Particka
                                                Assistant U.S. Attorney
                                                211 W. Fort Street, Suite 2001
                                                Detroit, MI 48226
                                                Phone: (313) 226-9635
                                                Ryan.particka@usdoj.gov

Dated: September 28, 2021

## Certificate of Service

I certify that on September 28, 2021, I electronically filed this Sentencing Memorandum, with the Clerk of the Court using the ECF system, which will send notification of such filing to the following attorney of the defendant:

William W. Swor,
Attorney for D-1 Toriano Adams

A copy was also emailed to Probation Officer Kristin L. Berry.

*s/Ryan A. Particka*
Ryan A. Particka
Assistant United States Attorney
211 West Fort Street, Suite 2001
Detroit, MI 48226
Phone: (313) 226-9635
Email: ryan.particka@usdoj.gov
