# EXHIBIT A

# New York Law Journal

WWW.NYLJ.COM

VOLUME 255—NO. 64

An ALM Publication

TUESDAY, APRIL 5, 2016

WHITE-COLLAR CRIME

Expert Analysis

## Rise of ABA Task Force's 'Shadow Sentencing Guidelines'



By **Robert J. Anello** And **Richard F. Albert**

Because the federal sentencing guidelines applicable to fraud cases are widely acknowledged as broken and dysfunctional, particularly in cases where the loss amount is high, sentencing judges may increasingly seek other sources to help guide their discretion. Since its issuance in November 2014, perhaps the most thoughtful alternative framework has been that offered by the American Bar Association's Criminal Justice Section Task Force on the Reform of Federal Sentencing for Economic Crimes, a blue ribbon panel of judges, law professors and practitioners assembled for the specific purpose of drafting a reform substitute.

With the U.S. Sentencing Commission's own long-term review of the fraud guideline having culminated in the November 2015 adoption of modest amendments that fall well short of the mark, the potential role for the task force's "shadow guidelines" has increased. A recent case in which Eastern District of New York Judge Eric N. Vitaliano relied upon the task force's proposal in imposing a 63-month sentence on a former CEO where the probation department calculated that the Sentencing Commission guidelines called for a sentence of 80 years' imprisonment illustrates the growing importance of the "shadow guidelines."

### Current Guideline

As previously discussed in this column, in high loss cases, the current economic crime guideline, set forth in Section 2B1.1 of the U.S. Sentencing Guidelines, often prescribe sentences that are so exorbitantly severe as to be worse than useless.[1] Principal sources of the guidelines' disproportionate upward creep over the years have been the combination of (1) the guidelines' original intention to regularly mandate prison sentences in white-collar cases; (2) steady increases to the guidelines' loss table and the repeated addition of new and overlapping "specific offense characteristics" through the 1990s; and (3) further increases to the loss table imposed by the Sentencing Commission as part of the Economic Crime Package of 2001, and then further upward ratcheting following passage of the Sarbanes-Oxley Act of 2003.

The result has been a system that gives loss amount ever-increasing weight while adding further increases that are highly correlated with big loss frauds, all in the context of a guidelines offense table that logarithmically increases the

---

*Where the loss amount is high, sentencing judges may increasingly seek other sources to help guide their discretion.*

---

impact on prescribed sentences as one moves higher in the table.[2] The bottom line, as widely recognized among judges, practitioners and scholars of federal sentencing, and as effectively conceded by Judge Patti B. Saris, chair of the Sentencing Commission, is that the guidelines are "fundamentally broken" in high-loss cases.[3]

Reacting to years of criticism, beginning in 2013, the Sentencing Commission undertook a comprehensive multi-year study of the economic crimes guideline. Concluding that the guidelines worked reasonably well in the broad category of fraud cases resulting in losses of less than $1 million, the commission offered only modest amendments. Effective November 2015, the commission amended the guidelines to, among other things, make inflationary adjustments to the loss table, revise the definition of "intended loss" to focus on the harm the particular defendant sought to inflict, and make revisions so that victim enhancements would not merely count victims but depend on whether the defendant's actions resulted in "substantial financial hardship" such as bankruptcy or loss of retirement savings.[4] Whether due to lack of will or a perceived lack of political support, the commission's proposals, although marginally beneficial, simply do not meaningfully take on the problem of the guidelines' application to high-loss fraud cases.

### The 'Shadow Guidelines'

As the Sentencing Commission began its overdue review of the fraud guideline, in April 2013 the Criminal Justice Section of the American Bar Association formed an elite task force to evaluate potential comprehensive reforms. The task force included prominent judges and law professors well known for their scholarship and insight in sentencing and the criminal law, including U.S. Court of Appeals for the Second Circuit Judge Gerard Lynch, Eastern District of New York Judge John Gleeson, Southern District of New York Judge Jed Rakoff, Harvard Law professor and former District of Massachusetts Judge Nancy Gertner, Duke Law professor Sara Sun Beale, and Yale Law professor Kate Stith. The result of the task force's work, issued in November 2014,[5] offers a fundamental alteration of the guidelines, substantially decreasing the focus on loss amount while properly increasing the importance of a defendant's culpability in guiding the sentencing determination.[6]

The task force proposal reduces the loss table from 15 tiers to six tiers, and decreases the enhancement for the highest loss amount from 30 offense levels to 14. The proposal also changes the definition of loss from the "greater of the actual or intended loss" to actual loss.

In its most significant innovation, the task force's shadow guidelines include a section called "culpability," adding six to 10 offense levels for those offenders with the highest culpability and subtracting six to 10 offense levels for those with the lowest culpability. The factors considered to determine a defendant's culpability level include the defendant's motive, whether the defendant initiated the offense or merely joined in criminal conduct initiated by others, the correlation between the amount of loss and the amount of the defendant's gain, the degree to which the offense and the defendant's contribution to it was sophisticated or organized, the duration of the offense and the defendant's participation in it, extenuating circumstances in connection with the offense, and

---

ROBERT J. ANELLO *and* RICHARD F. ALBERT *are partners at Morvillo Abramowitz Grand Iason & Anello P.C.* GRETCHAN R. OHLIG, *an attorney, assisted in the preparation of this article.*

whether the defendant took steps to mitigate the harm from the offense.

With regard to motive, the task force proposal provides four potentially useful categories for consideration: (1) predatory, for offense conduct accompanied by no legitimate basis that is intended to inflict loss or for the dominant purpose of generating personal gain; (2) legitimate ab initio, for offenses that arise from otherwise legitimate efforts that have crossed over into criminality as a result of unexpected difficulties; (3) risk shifting, for offenses that shift the risk of any potential loss from the defendant to a third party, such as lying for the purpose of obtaining a bank loan that is intended to be repaid; and (4) gatekeeping, for offenses that violate requirements intended to prevent practices that create a risk of loss, such as billing Medicare for actual, medically necessary services but without obtaining the required verification of medical necessity.

The task force's report includes a detailed set of application notes guiding the use of the culpability factors, and encouraging that they be applied flexibly. The culpability factors, by their nature, add room for a greater degree of balancing and nuance, and concomitantly, greater room for sentencing judges to exercise the traditional case-specific judgment that is the sine qua non of just sentencing.

The task force proposal also provides for four levels of victim impact: (1) minimal or none; (2) low; (3) moderate; and (4) high. High victim impact results in a six-level increase to offense level while minimal or no victim impact results in no increase. The factors influencing the appropriate level of victim impact include the vulnerability of the victims, whether the offense impacted the victim's financial soundness, whether the victim suffered non-economic harm, and whether the victim contributed to the offense in some manner.

Finally, consistent with the statutory scheme passed by Congress as part the 1987 Sentencing Reform Act and included in 28 U.S.C. 994(j), but not effectuated by the Sentencing Commission, the task force's proposal also includes a provision that caps the offense level for first-time offenders convicted of non-serious offenses at 10, resulting in a sentence that typically does not include imprisonment. When applied, the shadow guidelines significantly can reduce the sentence in a white-collar case. Not surprisingly, given the fundamental dysfunction of the Sentencing Commission guidelines in high loss cases, federal judges have begun to rely on the task force's shadow guidelines to support sentences that are more rational, more just and far shorter.

### 'United States v. Faibish'

On March 10, 2016, Eastern District of New York Judge Eric N. Vitaliano rejected the Sentencing Commission's guidelines' recommended 80-year sentence to impose a 63-month sentence on former Synergy Brands Inc. CEO Mair Faibish. A jury convicted Faibish of conspiracy to commit bank and securities fraud, bank fraud and making false statements to the Securities and Exchange Commission.

According to the government, Faibish and his co-conspirators funneled approximately $1.3 billion in checks that were not backed by sufficient funds through the bank accounts of various Canadian food manufacturers and distributors. The companies then sent checks in corresponding amounts back to Faibish-controlled shell companies. The scheme artificially inflated Synergy's account balances because the deposited funds immediately were made available for withdrawal. The fraud resulted in a loss of approximately $26 million to one FDIC-insured bank and the bankruptcy of Synergy, causing millions in investor losses. Faibish was ordered to pay forfeiture of $51.17 million.[7]

The Presentence Investigation Report calculated a loss amount of $32 million for Faibish's offense, resulting in a recommended guideline sentence of life in prison, capped at 80 years by the applicable statutory maximums. Faibish requested an evidentiary hearing to resolve issues of fact as to the calculation of loss. In a pre-sentencing decision denying Faibish's request, Judge Vitaliano noted that he "did not plan to peg Faibish's fate to a guidelines-computed loss amount."[8]

In sentencing Faibish on March 10, 2016, Judge Vitaliano explained that like "a whole host of judges who have said so publicly and scores of others who have…grumbled about it privately," he believed that "the guidelines, even with its

---

> Not surprisingly, given the fundamental dysfunction of the Sentencing Commission guidelines in high loss cases, federal judges have begun to rely on the task force's shadow guidelines to support sentences that are more rational, more just and far shorter.

---

slight revisions, are just mindlessly accelerated once you have numbers of any size added in the loss or gain table."[9] The court concluded that "while the current guidelines system does not provide a reasonable way to…try to provide fair and just punishment…the ABA task force guidelines certainly significantly move in that direction."[10]

Judge Vitaliano then conducted an alternative offense level analysis under the ABA Task Force guidelines, starting at level 7, adding 12 levels for loss, 3 levels for a victim enhancement and a 4-level increase for culpability, resulting in an offense level of 26, corresponding to a sentencing range of 63 to 78 months. The court concluded that such analysis was "fairly reflective of what a court is required to do under Section 3553(a)" and that to follow the shadow guidelines "is what is most reasonable here." The court then imposed a sentence of 63 months.[11]

### Other Cases

Judge Vitaliano is not the only federal judge to have relied on the task force's shadow guidelines to reach a more rational sentence in a white-collar case. Even before the ABA Task Force released its final draft of the shadow guidelines, U.S. District Court for the District of Connecticut Judge Robert N. Chatigny applied its methodology in *United States v. Rivernider*. The defendant was convicted of 18 counts of wire fraud and conspiracy to commit wire fraud. Judge Chatigny noted that the shadow guideline calculation, which resulted in a sentence of 144 months, was "preferable to" the 324-405 month calculation under the sentencing guidelines which "significantly overstate[d]" the defendant's culpability.[12]

Similarly, in *United States v. Litvak*, a securities fraud case, District of Connecticut Chief Judge Janet C. Hall stated that she had studied the shadow guidelines and was in "complete agreement with the drafters of this proposal, some of whom are very highly regarded judges in this circuit, in which the drafters urge the courts not to focus on things that are easily quantifiable."[13] Judge Hall sentenced the defendant to 24 months in prison where the guideline recommendation contained in the pre-sentence report was 108-135 months.[14]

### Conclusion

As evidenced by the disappointing results of the Sentencing Commission's recent comprehensive review, the federal sentencing guidelines applicable to high loss fraud cases are not likely to get their desperately needed comprehensive fix any time soon. For this reason, all who participate in the federal criminal justice system are well advised to study the alternative methodology advanced by the ABA's task force. While in application that methodology must of course be leavened by the sentencing judge's exercise of individualized discretion, the task force's approach offers a thoughtful, coherent path toward more reasonable sentences in white-collar cases.

•••••••••••••••

1. See Robert J. Anello and Richard F. Albert, "Waning Influence of Sentencing Guidelines in White-Collar Cases," NYLJ (Feb. 3, 2015).
2. Frank O. Bowman, III "Comment on Proposed Amendments to Economic Crime Guideline, §2B1.1" (Feb. 19, 2015) at pp. 3-7.
3. Id. at p. 2 (citing remarks of Judge Patti B. Saris Jan. 9, 2015, available at http://www.ussc.gov/sites/default/files/pdf/amendment-process/public-hearings-and-meetings/20150109/Remarks.pdf).
4. U.S.S.G. §2B1.1.
5. American Bar Association Criminal Justice Section, "A Report on Behalf of the American Bar Association Criminal Justice Section Task Force on the Reform of Federal Sentencing for Economic Crimes" (ABA Report) (Nov. 10, 2014).
6. ABA Report at i.
7. Department of Justice, "Former CEO of Long Island's Synergy Brands, Inc. Sentenced to 63 Months in Prison for Operating a Massive Check Kiting Scheme," Press Release (March 10, 2016).
8. Memorandum and Order, *United States v. Faibish*, 12cr265 (E.D.N.Y. July 16, 2015) (internal citations omitted).
9. Sentencing Transcript, *United States v. Faibish*, 12cr265 (E.D.N.Y. March 10, 2016) at 23:2-7.
10. Id. at 23:20-25.
11, Id. at 54:2-3, 10-11.
12. Sentencing Transcript, *United States v. Rivernider*, 3:10cr222 (D. Conn. Dec. 18, 2013) at 206:10-13, 212:5-14.
13. Sentencing Transcript, *United States v. Litvak*, 3:13cr19 (D. Conn. July 23, 2014) at 135-136.
14. Litvak's conviction was subsequently reversed on appeal, and the case remanded for retrial. *United States v. Litvak*, 808 F.3d 160 (2d Cir. 2015).

Reprinted with permission from the April 5, 2016 edition of the NEW YORK LAW JOURNAL © 2016 ALM Media Properties, LLC. All rights reserved. Further duplication without permission is prohibited. For information, contact 877-257-3382 or reprints@alm.com. # 070-04-16-02